UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHANTA DUNCAN                                               CIVIL ACTION

v.                                                          NO. 18-6143

CHRISTOPHER CELESTINE, ET AL.                               SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Jazz Casino Company and Harrah's New Orleans Management Company's motion for summary judgment that they are not vicariously or primarily liable for an employee's alleged assault and battery. For the reasons that follow, the motion is GRANTED, in part, as to all claims against Harrah's New Orleans Management Company and the direct negligence claims against Jazz Casino Company, and DENIED, in part, as to the vicarious liability claim against Jazz Casino Company.

**Background**

A casino guest says a security guard sexually assaulted her at Harrah's New Orleans Casino. This lawsuit followed.

It was summer 2017, the weekend of Essence Festival.[1] Shanta Duncan had travelled to New Orleans to attend. On her first night

---

[1] Essence Festival is an annual weekend-long festival celebrating African-American music and culture; it was established in New Orleans twenty-five years ago and regularly draws 500,000-plus attendees.

1

in town, she visited Harrah's Casino, hoping to catch a late-night concert at the Masquerade Nightclub. She was alone. Christopher Celestine was working security that night; it was his job to check identification and "engage" with patrons. He spotted Duncan in the tunnel entrance and struck up a conversation. He and Duncan disagree about what happened next.

According to Duncan, Celestine offered her free concert tickets and asked her to step aside. She obliged. Now alone, Celestine asked Duncan "what [she] got on up under that dress," pulled her dress to the side, and placed his hand on her vagina. Duncan recoiled. Celestine responded that he "just want[ed] to see what was up under [Duncan's] dress." Duncan left the casino but returned several hours later, hoping to obtain Celestine's name. She was unsuccessful: Celestine had flipped his nametag so that his name was not visible.

Celestine tells a different story. He says he engaged Duncan in polite small talk, and he denies touching her vagina. He says he was "just making jokes" about her attire. Although surveillance footage shows his hand moving near Duncan's vagina, Celestine insists he was merely demonstrating how her dress came close to flunking the casino's dress code.

The rest is undisputed. The day after the alleged incident, Duncan returned to the casino to file a report. She spoke with the casino's Director of Security, Stacey Dorsey, and gave a written

statement. She filed a police report a few days later. Based on the report, the New Orleans Police Department Sex Crimes Unit issued a warrant for Celestine's arrest.[2]

Jazz Casino Company owns Harrah's New Orleans Casino. It has twice hired and fired Celestine. It first hired him in August 2015, following a panel interview and a background check confirming he had no criminal record. It fired him nine months later, citing his "appearance of sleeping while on duty." The termination provided, however, that Celestine was "eligible for re-hire" at any time.

In May 2017, Jazz Casino Company re-hired Celestine as a security officer. It performed another background check, which again reflected that Celestine had no criminal record. The alleged assault and battery occurred two months later, on July 3, 2017, and Celestine's final day of work was the next day. Celestine was suspended and, in September 2017, fired.

Before the alleged incident, Jazz Casino Company lacked information indicating that Celestine was prone to sexual misconduct: He had no criminal record; he had never been disciplined by any prior employer; and he had never been accused of sexual misconduct. To the contrary, he was a middle-aged single father of two children, ages eleven and ten. Jazz Casino had even provided him some sexual harassment training. But Celestine's

---

[2] The parties fail to explain the status of the criminal prosecution.

supervisors noticed some unusual behavior on the day of the incident: He spent an "inordinate amount of time fraternizing" and, at "a couple of points," appeared to swap phone numbers with patrons.

Invoking the Court's diversity jurisdiction, Duncan sued Celestine, Jazz Casino Company, and Harrah's New Orleans Management Company.[3] She alleges negligent infliction of emotional distress, assault, and battery claims against Celestine. She says Jazz Casino Company and Harrah's New Orleans Management Company are vicariously liable for Celestine's torts and primarily liable for negligently hiring, supervising, and training him.

Now, Jazz Casino Company and Harrah's New Orleans Management Company move for summary judgment that they are neither vicariously nor primarily liable in connection with Celestine's alleged assault and battery. Duncan opposes.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could

---

[3] Celestine did not answer Duncan's complaint, and the Clerk of Court entered a default against him on November 9, 2018.

4

return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." <u>Id.</u> at 248.

If the non-movant will bear the burden of proof at trial, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." <u>In re La. Crawfish Producers</u>, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 541 (5th Cir. 2003). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." <u>LeMaire v. La. Dep't of Transp. & Dev.</u>, 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. <u>See</u> <u>Midwest Feeders, Inc. v. Bank of Franklin</u>, 886 F.3d 507, 513 (5th Cir. 2018). The Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties

5

have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

II.

Jurisdiction is based on diversity, so the Court applies Louisiana substantive law. See Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Because Louisiana choice-of-law rules are substantive, the Court applies them here. See Weber v. PACT XPP Tech., AG, 811 F.3d 758, 770 (5th Cir. 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). The first step under Louisiana choice-of-law rules is determining whether the laws of two or more states conflict. Lonzo v. Lonzo, 17-0549, p. 12 (La. App. 4 Cir. 11/15/17); 231 So. 3d 957, 966. If they do not, the Court applies forum law. See Am. Elec. Power Co. v. Affiliated FM Ins. Co., 556 F.3d 282, 285 n.2 (5th Cir. 2009). The parties have not identified a conflict, and the Court has not found one. Accordingly, the Court applies Louisiana substantive law.

III.

Jazz Casino Company and Harrah's New Orleans Management Company contend that Duncan lacks evidence sufficient to hold them vicariously liable for Celestine's alleged assault and battery.

6

A.

The source of vicarious liability in Louisiana, Civil Code Article 2320, instructs that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." LA. CIV. CODE art. 2320. For example, "an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment." Baumeister v. Plunkett, 95-2270, p. 2 (La. 5/21/96); 673 So. 2d 994, 996.

The "course" of employment refers to time and place, and the "scope" of employment "examines the employment-related risk of injury." Richard v. Hall, 03-1488, p. 6 (La. 4/23/04); 874 So. 2d 131, 138. The "employment-related risk of injury increases with the amount of authority and freedom" granted to the employee in the performance of his tasks. Id. at 138. Whether an employee's conduct is sufficiently employment-related to impose vicarious liability is a mixed question of law and fact. Russell v. Noullet, 98-816, p. 5 (La. 12/1/98); 721 So. 2d 868, 871.

Vicarious liability extends to intentional torts. Benoit v. Capitol Mfg. Co., 617 So. 2d 477, 479 (La. 1993) (citing Jones v. Thomas, 426 So. 2d 609 (La. 1983)). In determining whether an employer is vicariously liable for an employee's intentional tort,

7

courts consider four factors: "(1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." Baumeister, 673 So. 2d at 996-97 (citing LeBrane v. Lewis, 292 So. 2d 216, 218 (La. 1974)). Although a plaintiff need not establish all four LeBrane factors, "[a]n employer is not vicariously liable merely because [its] employee commits an intentional tort on the business premises during working hours." Baumeister, 673 So. 2d at 996-97.

B.

Jazz Casino Company says it is entitled to summary judgment on Duncan's vicarious liability claim because Duncan cannot establish LeBrane factors one and two.[4] The Court disagrees.

1.

Factor one requires Duncan to show that Celestine's alleged misconduct was "primarily employment rooted." LeBrane, 292 So. 2d at 218. Jazz Casino Company submits that Duncan cannot make that showing because Celestine's alleged misconduct "did not further the business" of the casino and was, in fact, "entirely extraneous" to the casino's interests. Duncan rejoins that she can, emphasizing

---

[4] It is undisputed that LeBrane factors three and four are met: Celestine's alleged misconduct occurred on casino premises during work hours. See Baumeister, 673 So. 2d at 997.

8

that the alleged misconduct occurred while Celestine was performing his duties — checking identification and "engaging" with patrons.

As the parties acknowledge, even sexual acts can be "employment rooted." See, e.g., Edmond v. Pathfinder Energy Servs., Inc., 11-151, pp. 8-9 (La. App. 3 Cir. 9/21/11); 73 So. 3d 424, 428-29. Consider Baumeister. See 673 So. 2d 994. At issue there was a hospital's vicarious liability for a sexual battery a supervisor committed against a co-worker during work hours on the hospital's premises. Id. The Louisiana Supreme Court held that the hospital was not vicariously liable. Id. at 1000. The sexual battery was not "employment rooted," the court reasoned, because the supervisor did not order the victim-plaintiff into the lounge, threaten her with the loss of her job if she did not respond to his advances, or otherwise exercise his supervisory authority in connection with the battery. Id. at 999-1000. Critically, the court rejected a rule that regards all sexual misconduct as extraneous to employment. Id. at 1000 ("We do not mean to state, however, that all sexual acts are of a personal nature and might not sometimes be employment rooted.").

That rejection is merely an application of the general rule for mixed-motive cases:

> The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If

9

> the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.

Ermert v. Hartford Ins. Co., 559 So. 2d 467, 476-77 (La. 1990); see also RESTATEMENT (SECOND) OF AGENCY § 236 ("Conduct may be within the scope of employment, although done in part to serve the purposes of the servant[.]").

Application of that rule to this muddled summary judgment record yields no clear result. Factual disputes abound. To be sure, the nature of the alleged act — a sex crime — suggests that it was "actuated" by Celestine's allegedly prurient interest in Duncan, not by serving Jazz Casino Company's interests.[5] So too does Duncan's testimony. She says Celestine had already checked her identification, thus concluding his "service" of Jazz Casino Company's interests, when he asked her to step aside for the private conversation that presaged the assault.

But Celestine's testimony supports another conclusion. He denies touching Duncan's vagina, and he says his duties included "engaging" with patrons.[6] According to him, Jazz Casino Company

---

[5] It is doubtful that an employee's commission of a sex crime against a patron could ever serve the (lawful) business interests of his employer. See RESTATEMENT (SECOND) OF AGENCY § 235 cmt. c. ("The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business.").

[6] Of course, a jury could find that Celestine's private conversation went well beyond service-industry chit-chat; if Celestine's deposition testimony is discounted, the conversation

10

instructs its security guards to make small talk and, at the time of the alleged assault and battery, he was merely acting in accordance with that instruction. This testimony creates genuine disputes of material fact on: (1) the scope of Celestine's duties; (2) whether Celestine touched Duncan inappropriately; and (3) if Celestine did touch Duncan inappropriately, whether the touching was sufficiently "employment rooted" to satisfy LeBrane factor one. See Garcia v. Lewis, 50,744, pp. 11-12 (La. App. 2 Cir. 6/22/16); 197 So. 3d 738, 743-44; Edmond, 73 So. 3d at 428-29.

2.

Factor two requires Duncan to show that Celestine's alleged misconduct was "reasonably incidental" to his performance of his duties as a security guard. LeBrane, 292 So. 2d at 218. Jazz Casino Company says Duncan cannot make that showing because Celestine's duties did not include sexual contact with patrons. Duncan counters that she can, underscoring that the assault and battery occurred as Celestine "engaged" with patrons and checked their identification.

An employee's misconduct can be "reasonably incidental" to his duties, even if "totally unauthorized by the employer and

---

began with an offer of concert tickets and ended with a statement of purpose: "I'm trying to see what you got on up under that dress." That, a jury could find, is not the polite "engagement" that was among Celestine's duties —— it is sexual misconduct antithetical to them. These fact issues are of course material and disputed for Rule 56 purposes.

motivated by the employee's personal interest." Samuels v. S. Baptist Hosp., 594 So. 2d 571, 574 (La. Ct. App. 4th Cir. 1992). This principle applies with particular force when the employee exercises authority over his victim. See, e.g., Edmond, 73 So. 3d at 425 (employee – supervisor); Samuels, 594 So. 2d at 574 (nursing assistant – patient); Applewhite v. City of Baton Rouge, 380 So. 2d 119 (La. Ct. App. 1st Cir. 1979) (police officer – citizen).

Celestine's duties at the time of the alleged assault and battery are disputed.[7] As is his conduct. If the Court resolves those disputes in Duncan's favor, as it must on summary judgment, Celestine's duties included: checking identification, engaging with patrons, and maintaining order; his conduct included: making small talk in furtherance of Jazz Casino Company's interests and, during that small talk, touching Duncan's vagina. The risk that a security guard like Celestine might inappropriately touch a patron while checking identification, "engaging," or maintaining order is "fairly attributable" to Jazz Casino Company's gaming business. Baumeister, 673 So. 2d at 999.

Because the record discloses genuine disputes of material fact bearing on LeBrane factors one and two, Jazz Casino Company

---

[7] The parties dispute the facts that speak to Celestine's authority; accordingly, on this record, the Court cannot determine the "employment-related risk of injury." Richard, 874 So. 2d at 138.

12

is not entitled to summary judgment on Duncan's vicarious liability claim. See Edmond, 73 So. 3d at 429.

C.

Harrah's New Orleans Management Company contends that it cannot have vicarious liability for Celestine's alleged torts because Celestine was not its "servant" under Civil Code Article 2320. The Court agrees.

A "servant" includes "anyone who performs continuous service for another and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service." Ermert, 559 So. 2d at 476.

It is undisputed that Harrah's New Orleans Management Company never employed Celestine. And no facts in the record support a finding that Celestine "perform[ed] continuous service" for the company or was "subject to" its "control." Ermert, 559 So. 2d 476. So, Celestine was not Harrah's New Orleans Management Company's "servant." See LA. CIV. CODE art. 2320. Because Celestine was not Harrah's New Orleans Management Company's "servant," the company is not vicariously liable for his alleged torts. See, e.g., Doe v. McKesson, 935 F.3d 253, 260 (5th Cir. 2019).

The record discloses no genuine dispute as to any material fact regarding Harrah's New Orleans Management Company's vicarious liability for Celestine's alleged torts. Harrah's New Orleans

13

Management Company is entitled to judgment on Duncan's vicarious liability claim as a matter of law. The Court therefore grants the motion for summary judgment as to Duncan's vicarious liability claim against Harrah's New Orleans Management Company.[8]

IV.

Jazz Casino Company and Harrah's New Orleans Management Company next contend that Duncan lacks evidence sufficient to hold them directly liable for negligently hiring, training, and supervising Celestine. The Court agrees.

A.

The familiar duty/risk analysis governs claims of negligent hiring, training, and supervision. Jackson v. Ferrand, 94-1254, pp. 11-12 (La. App. 4 Cir. 12/28/94); 658 So. 2d 691, 698. Under that analysis, a plaintiff must prove five elements: (1) duty; (2) breach; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages. Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La. 3/10/06); 923 So. 2d 627, 633. The duty element presents a question of law; the other elements present questions of fact. Fowler v. Roberts, 556 So. 2d 1, 4-5 (La. 1989).

---

[8] Harrah's New Orleans Management Company is entitled to summary judgment on another ground: Duncan abandoned her vicarious liability claim against the company when she failed to brief it in opposition to the motion for summary judgment. See Blackwell v. Laque, 275 F. App'x 363, 366 n.3 (5th Cir. 2008) (per curiam).

An employer has a duty to exercise reasonable care in hiring, training, and supervising its employees. Roberts v. Benoit, 605 So. 2d 1032, 1041 (La. 1992); see also Kelley v. Dyson, 08-1202, p. 7 (La. App. 5 Cir. 3/24/09); 10 So. 3d 283, 287 ("When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee.").

B.

Jazz Casino Company exercised reasonable care in hiring, training, and supervising Celestine. See Roberts, 605 So. 2d at 1041. It hired Celestine following a criminal background check and a panel interview. It trained Celestine in sexual harassment, and Celestine knew that casino policy prohibited assaulting or battering patrons.

In an effort to impute to Jazz Casino Company knowledge of Celestine's alleged propensity for sexual misconduct, Duncan points to "other instances" where Celestine "fraternized" with guests for an "inordinate" amount of time. But these "other instances" occurred on the same day as the alleged assault and battery; they do not support a material disputed fact that Jazz Casino knew or should have known that Celestine would commit sexual misconduct.

Unable to show ordinary negligence, Duncan invokes two statutes to support imposing a heightened duty on Jazz Casino Company. See 34 U.S.C. § 41106; LA. REV. STAT. § 37:3276. Neither applies. The first, 34 U.S.C. § 41106, authorizes certain employers to conduct criminal history record searches of potential employees through a state entity designated by the Attorney General of the United States. It imposes no duty — heightened or otherwise — on Jazz Casino Company. The second, LA. REV. STAT. § 37:3276, is an occupational licensing law. It sets standards for licensure by the Louisiana State Board of Private Security Examiners of security guards employed by private contract security companies. Id. But it does not apply to businesses that employ "persons who do private security work in connection with the affairs of such employer only and who have an employer-employee relationship with such employer." LA. REV. STAT. § 3298(A). Because Jazz Casino Company is such a business, Duncan's contention misses the mark.

The record discloses no genuine dispute as to any material fact regarding Harrah's New Orleans Management Company and Jazz Casino Company's negligence in hiring, supervising, or training Celestine. Harrah's New Orleans Management Company and Jazz Casino Company are entitled to judgment on Duncan's negligence claims as a matter of law. The Court therefore grants the motion for summary judgment as to Duncan's negligence claims against Harrah's New Orleans Management Company and Jazz Casino Company.

V.

Accordingly, IT IS ORDERED: that Jazz Casino Company and Harrah's New Orleans Management Company's motion for summary judgment is GRANTED, in part, as to all claims against Harrah's New Orleans Management Company and the direct negligence claims against Jazz Casino Company, and DENIED, in part, as to the vicarious liability claim against Jazz Casino Company.

New Orleans, Louisiana, October 9, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE